DECISION AND JOURNAL ENTRY
{¶ 1} This matter is before this Court on cross-appeals from an order of the Medina County Domestic Relations Court which found appellant/cross-appellee Constance M. Rush ("wife") was required to elect a single life annuity under her State Teacher's Retirement System ("STRS") pension pursuant to the judgment decree of divorce entered on March 13, 1998. The court also found that appellee/cross-appellant Keith E. Schaffter ("husband") was not entitled to survivorship or cost of living increases ("COLAs") under wife's pension. Last, the trial court found wife in contempt for failing to set aside husband's portion of her pension benefit and converting the funds to her own use. For the following reasons, this Court finds that the trial court's findings in all respects were proper and affirms.
 I. {¶ 2} The facts in this case are not in dispute. The parties were granted a divorce on March 13, 1998. Pursuant to the divorce decree, wife was required to assign to husband a 34.78% interest in her STRS pension. The court required the parties to obtain a Qualified Domestic Relations Order ("QDRO") to accomplish the division of wife's pension if the law was amended or modified to permit division of her STRS pension pursuant to a QDRO.[1]
 {¶ 3} On January 1, 2002, the Ohio Legislature amended R.C.3307.41 to permit STRS pension benefits to be assigned. Between the divorce decree in March 1998 and wife's retirement in June 2002, neither party attempted to execute a QDRO to assign the percentage of the pension to husband.
 {¶ 4} Wife remarried on February 16, 2002 and retired in June 2002. In applying for her STRS pension, she elected to give her new husband a jointsurvivor annuity. The result of this election was to reduce her monthly retirement benefit from $3931.41 to $3646.78. This election also reduced the amount that husband was to receive as a percentage of her pension.
 {¶ 5} In June 2002, wife proposed a QDRO to husband to assign him a percentage of her pension as required by the divorce decree. Husband refused because the proposed QDRO did not contain survivorship or cost of living adjustments. In July 2002, wife began receiving her STRS pension without reduction for her husband's share.
 {¶ 6} In July 2002, the court, with the parties' approval, submitted a QDRO to STRS, but it was rejected. STRS stated that the QDRO did not comply with the pension plan provisions because it provided for COLA and survivorship rights not available to "alternate payees" such as husband under Ohio Rev. Code 3307. Wife claimed she agreed to COLA and survivorship benefits only to "get the divorce over with." Both parties acknowledge that COLA and survivorship rights are not currently available under STRS to alternate payees.
 {¶ 7} In January 2003, the court, over husband's objection, filed a new QDRO with STRS that did not contain COLA or survivorship rights. On July 2, 2003, the parties presented the court with a division of property order ("DPO") which the court approved. The DPO did not contain either COLA or survivorship rights. In August 2003, STRS approved the DPO.
 {¶ 8} In September 2003, husband began receiving a monthly benefit from STRS in the amount based on the lesser amount of wife's pension resulting from her election to receive a joint survivor annuity instead of a single life annuity. Husband has not received any COLAs despite the fact that wife has received two such COLAs.
 {¶ 9} On September 24, 2003, husband filed for contempt against his wife for failure to pay him any part of her pension from July 2002 through August 2003, although wife was continuing to receive the entire pension amount. Wife filed a motion for summary judgment on the issue of her contempt and requested attorney's fees. It is undisputed that from the period of July 2002 through August 2003, husband received nothing from wife's pension.
 {¶ 10} On April 19, 2004, the trial court found that the parties contemplated that wife's benefit was to be divided pursuant to a single life annuity benefit. The court also found that wife was in contempt of court for her failure to pay husband any part of her pension despite the court's order that she do so. The court last found that it was without authority to grant husband any rights of survivorship or COLA increases because STRS does not provide for these rights to an alternate payee such as husband. Both parties have appealed.
 II. {¶ 11} Wife has assigned four errors to the trial court's findings.
 ASSIGNMENT OF ERROR I
"The court erred, as a matter of law, in finding that the appellee [husband] was entitled to a monthly payment based upon a single life annuity rather than a joint life annuity."
 {¶ 12} In this case, wife argues that STRS does not permit her to elect a single life annuity because she is married. She argues that her new husband has the right to refuse consent to a single life annuity under Ohio Rev. Code Section3307.60(H)(1)(b).[2] She claims that her new husband did not consent to her electing to receive a single lifetime annuity. Consequently, she argues that she has lawfully elected a joint survivor annuity in favor of her new husband.
 {¶ 13} Wife argues that STRS permits husband to receive only a percentage of the amount that she, as a married woman, is entitled. She argues that STRS does not permit a QDRO to grant rights to alternate payees that are contrary to the plan under Ohio Rev. Code Section 3105.83.[3] Consequently, wife claims that husband is lawfully entitled only to the percentage of her pension based on the joint-survivorship right she lawfully elected.
 {¶ 14} Husband argues that wife should be required to select a single life annuity because wife's retirement benefits were marital assets.
 {¶ 15} The trial court found that the divorce decree contemplated that STRS benefits were to be provided to husband according to the single life annuity benefit. The court held that the marital assets were to be distributed between wife and husband, not wife and new husband.
 {¶ 16} This Court finds that the trial court was correct. R.C. 3307.60(G) provides:
"(G) Following marriage or remarriage, a retirant may elect anew optional plan of payment based on the actuarial equivalent ofthe retirant's single lifetime benefit, as determined by the board, except that if the retirant is receiving a retirement allowance under an optional plan that provides for continuation of benefits after death to a former spouse, the retirant may elect a new optional plan of payment only with the written consent of the former spouse or pursuant to an order of the court with jurisdiction over the termination of the marriage. Such plan shall become effective the first of the month following an application on a form approved by the board." [Emphasis added.]
 {¶ 17} This provision allows wife as retirant to elect a single lifetime benefit upon remarriage without her new husband's consent.[4] R.C 3307.60(G) prevents wife from forcing husband to subsidize benefits to her new husband.
 {¶ 18} R.C. 3307.60(G) applies instead of R.C. 3307.60(H)(1), because its provisions are specifically tailored to cases of remarriage. Further, R.C. 3307.60(G) does not conflict in any way with R.C. 3307.60(H).
 {¶ 19} In this case, the trial court found that the parties contemplated that wife would elect a single life annuity upon their divorce and ordered wife to make such an election. STRS permits her to do so without her new husband's consent. The trial court's order regarding that election is affirmed
 ASSIGNMENT OF ERROR II
"The court's finding `from July, 2002 through August, 2003, the defendant [wife] knowingly withheld and converted to her own personal use the plaintiff's [husband] funds to which he was entitled from STRS' is against the manifest weight of the evidence and is error as a matter of law."
 {¶ 20} There is no question that between July 2002 and August 2003, husband received nothing from wife's pension. In her interrogatory answers, wife claimed that she was setting aside husband's percentage of her pension. However, at the hearing she admitted withdrawing the funds and spending them for home improvements.
 {¶ 21} The trial court found wife guilty of contempt for knowingly and willfully withholding and converting to her own use husband's portion of her pension. The court also found that wife lied about withholding the funds in her answers to interrogatories.
 {¶ 22} In reviewing motions for contempt, this Court applies an abuse of discretion standard. Ryder v. Ryder (Feb. 19, 2002), 5th Dist. No. 2001CA00190, 2002-Ohio-0765. An abuse of discretion means that a court's decision was unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217 at 219. A knowing failure to obey the lawful order of the court is a ground for a finding of contempt. Arthur Young Co. v. Kelly (1990), 68 Ohio App.3d 287 at 293. See, also, Ohio Rev. Code Section 2705.02.[5] Civil contempt is designed to benefit the complainant and is remedial in nature.In re Purola (1991), 73 Ohio App.3d 306 at 311. Civil contempt uses fines or prison sentences which are conditioned upon performing some act. Id. The party found in contempt must be permitted to appeal in court and purge herself of contempt by complying with the court order. Id. At 312.
 {¶ 23} In this case, the trial court found wife in civil contempt and provided her an opportunity to purge her contempt. We find that the court did not abuse its discretion in finding wife in contempt. There was sufficient evidence in the record to support the court's finding. Wife was required to assign a portion of her pension to husband, and though the parties had a difficult time accomplishing this goal, wife did not have the right to abscond with funds which she knew belonged to husband. The trial court's finding of contempt is supported by the evidence and is affirmed.
 ASSIGNMENT OF ERROR III
"The court's finding that `in fact the defendant [wife] averred under oath in her answers to the plaintiff's [husband] interrogatories that she was saving the plaintiff's share and holding the same for his benefit in a financial account' is against the manifest weight of the evidence."
 {¶ 24} The trial court found wife in contempt because she lied in her interrogatories that she was saving husband's share and holding the same for his benefit in a separate account. The court also found that wife admitted to lying at the hearing because she admitted withdrawing the money from the account to use for home improvements while averring in her interrogatories that she was depositing the money into a specific account.
 {¶ 25} Wife argues that she did not aver in her interrogatories that she was saving money for husband, only that she was depositing money into the account. She further alleges that she had other money saved that she planned to use to pay husband his share when the court ordered her to do so.
 {¶ 26} As noted above, this Court reviews a trial court's order of contempt under an abuse of discretion standard. Ryder.
In this case, we find that the trial court did not abuse its discretion in finding wife in contempt. The court had sufficient evidence to conclude that she was untruthful about saving the pension funds in answering the interrogatories.
 ASSIGNMENT OF ERROR IV
"The court erred, as a matter of law, in finding that the appellant [wife] was in contempt"
 {¶ 27} The trial court found that wife knowingly converted husband's percentage of her pension to her own use in violation of the court's order that she assign husband a percentage of her pension. Therefore, the court found her guilty of contempt.
 {¶ 28} The wife argues that the court erred as a matter of law in finding that she was in contempt. She claims she cannot be in contempt for not paying what she was not ordered to pay. She argues that she was only required to assign the percentage of the pension to husband and that she did so. She claims that husband refused to cooperate with her in assigning the pension.
 {¶ 29} We do find some merit in wife's argument. It is clear from the record that she did make several efforts to comply with the court's order to assign husband his share, but that his refusal to agree to the assignment prevented her from complying. However, our duty is to review the trial court's finding under an abuse of discretion standard. Ryder. This Court cannot substitute its judgment for that of the trial court. Pons v.Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621. Here, this Court cannot find that the court acted arbitrarily or unreasonably in finding wife in contempt. Wife's fourth assignment of error is overruled.
 III. {¶ 30} Husband has assigned one error.
 ASSIGNMENT OF ERROR I
"The trial court erred by its refusal to award appellee-cross appellant [husband] post decree adjustments or enhancements in Appellant-cross Appellee's [wife] State Teachers Retirement System of Ohio Pension including cost of living adjustments (COLA)."
 {¶ 31} Husband argues that the trial court erred when it refused to award him a proportionate share in wife's COLAs. Husband argues that pension and retirement benefits acquired during a marriage are considered marital assets that are subject to division upon divorce under R.C. 3105.171. He acknowledges that the STRS currently does not recognize COLAs benefits for alternate payees under R.C. 3307. Regardless of this fact, he contends that the court, in the exercise of its discretion, should have ordered wife to make direct payments to him of his proportionate share of her COLA increases. He argues that the parties agreed to COLA increases for husband in an order sent to, but rejected by, STRS.
 {¶ 32} A trial court is given broad discretion in allocating marital assets under R.C. 3105.171. On review, the court's allocation is not to be disturbed unless the reviewing court finds an abuse of discretion. Burner v. Burner (Oct. 18, 2000), 9th Dist. No. 19903, 2000-Ohio-6606.
 {¶ 33} In this case, this Court finds that the trial court did not abuse its discretion in refusing to grant husband a proportionate share in wife's COLA increases. As husband admits, STRS does not permit COLAs for alternate payees. This Court cannot find that the court abused its discretion in refusing to go outside the parameters of that system and granting husband rights beyond those statutorily permitted.
 IV. {¶ 34} For the foregoing reasons, this Court finds that the judgment of the Medina County Domestic Relations Court was proper in all respects and affirm.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to appellant.
Exceptions.
Whitmore, J., Boyle, J., concur
[1] Before the 2002 amendments, STRS pensions were not assignable pursuant to a QDRO. See Ohio Rev. Code Section3105.171.
[2] Ohio Rev. Code Section 3307.60(H)(1) states: Unless one of the following occurs, an application for service retirement made pursuant to section 3307.58 or 3307.59 of the Revised Code by a married person shall be considered an election of a benefit under option 2 [a joint life annuity with survivorship rights] as provided for in division (A)(2) of this section under which one-half of the lesser benefit payable during the life of the retirant will be paid after death to the retirant's spouse for life as sole beneficiary: * * *
(b) The retirant submits to the retirement board a written statement signed by the spouse attesting that the spouse consents to the retirant's election to receive a single lifetime annuity or a payment under an optional benefit plan under which after the death of the retirant the surviving spouse will receive less than one-half of the lesser benefit payable during the life of the retirant.
[3] Ohio Rev. Code Section 3105.83 provides in part: "An alternate payee has no right or privilege under sections 742.01
to 742.61 or Chapter 145, 3305, 3307, 3309, or 5505 of the Revised Code that is not provided in those sections or chapters."
[4] In fact this provision requires a former wife to obtain her former husband's consent or a court order to make any change in her retirement plan upon remarriage if her former husband was to receive a joint survivor annuity.
[5] This section provides, in part: "A person guilty of any of the following acts may be punished as for a contempt: (A) Disobedience of, or resistance to, a lawful writ, process, order, rule, judgment, or command of a court or officer[.]"