[Cite as *Ohio Metal Servs., L.L.C. v. All-In Metals*, 2013-Ohio-2174.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

OHIO METAL SERVICES, LLC, et al.

    Appellants

    v.

ALL-IN METALS, LLC, et al.

    Appellees

C.A. No.     26240
             26625

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    2008-03-2130

DECISION AND JOURNAL ENTRY

Dated: May 29, 2013

WHITMORE, Judge,

{¶1} Plaintiff-Appellants, Ohio Metal Services, LLC ("Ohio Metal") and E. William Glause, appeal from two judgments of the Summit County Court of Common Pleas in favor of All-In Metals, Neil Armstrong, Carol Armstrong, the Estate of Bruce Meyer c/o Brent Meyer, Executor, and Jane Meyer (collectively "All-In"). This Court affirms.

I

{¶2} All-In acquired two million pounds of steel from a bankruptcy estate and sold one million pounds of the steel. Subsequently, one of All-In's original shareholders split from the company. Because that shareholder had been responsible for marketing the steel that All-In had acquired, All-In and Ohio Metal negotiated for Ohio Metal to assume an ownership interest in All-In and handle the sale of the remaining one million pounds of steel. Although a transfer of the steel inventory to Ohio Metal's facility took place, the agreement for Ohio Metal to purchase an ownership interest in All-In fell through. According to Ohio Metal, it attempted to deliver its

payment for the purchase of the ownership interest, but All-In rejected payment. According to All-In, Ohio Metal failed to make the payment for purchase.

{¶3} In March 2008, Ohio Metal brought suit against All-In for breach of contract. All-In filed a counterclaim as well as a third-party complaint against Glause, Ohio Metal's manager, for conversion and replevin, citing Ohio Metal's wrongful retention of All-In's steel inventory without payment. All-In also sought an injunction to enjoin Ohio Metal from taking any action with regard to the inventory. A wealth of motion practice then ensued up until the scheduled trial date in February 2010.

{¶4} Shortly before the trial commenced, the parties notified the court that they had reached a settlement. Consequently, the court cancelled the scheduled trial and awaited a filed settlement agreement. The parties came before the court several months later, however, because they had been unable to succeed in drafting a written settlement agreement that satisfied all the parties. The court held a hearing and issued an order on September 21, 2010, in which it determined that the parties had settled in February 2010 and set forth the terms of their settlement agreement.

{¶5} The settlement agreement provided that neither Ohio Metal, nor Glause had any ownership interest in either All-In or its steel inventory, but that, by way of a broker agreement,[1] Glause would act as an independent contractor for All-In. As an independent contractor, Glause would have one year from the date of the court's September 21, 2010 order to sell the steel inventory in Ohio Metal's possession in exchange for 1/3 of the gross profits on any sales. At the end of that year, the unsold portions of the inventory would be returned to All-In. The only exception was that, if during the one-year period Glause achieved gross sales in excess of

---

[1] The broker agreement was not a separate document. Rather, it was contained within the provisions of the settlement agreement itself.

$300,000, the broker agreement would be extended for another six months. The settlement agreement specifically provided for the creation of a joint escrow checking account for the deposit of all proceeds from the sale of any inventory and the appointment of a receiver (Attorney Ray Weber) to receive all funds for the account, deposit those funds into the account, maintain the account, and make monthly distributions of any proceeds in the account. Per the terms of the agreement, neither Ohio Metal, nor Glause was to accept "any cash, credit, swap, or any other form of consideration for the sale of [the] steel inventory." Glause also was required to provide quarterly updates about the status of the inventory and, upon request by All-In, allow All-In and its agents to view the inventory at any time. The agreement provided that the court would maintain jurisdiction over the litigation and terms of the settlement agreement with regard to "any questions, disputes, or claims to interpret or enforce any [of its] provisions."

{¶6} On August 29, 2011, All-In filed a motion to enforce the settlement agreement, noting, among other things, that certain inventory was missing, Glause had not provided any accountings, and the receiver had not received any money. The trial court held a hearing on All-In's motion on September 22, 2011; one day after the one-year period Glause was given to sell the inventory. The court issued a decision on November 29, 2011. In its decision, the court determined that a material breach of the settlement agreement had occurred. The court ordered that, as a consequence of the breach, the broker agreement portion of the settlement agreement was terminated and all portions of All-In's steel inventory had to be returned to All-In. Ohio Metal and Glause appealed from the court's decision in Appeal No. 26240.

{¶7} While Appeal No. 26240 was pending, the trial court issued several journal entries in which it ordered Ohio Metal and Glause to permit All-In to access its steel inventory. In response, Ohio Metal and Glause filed a motion asking the court to vacate and/or clarify its

November 29th decision. Ohio Metal and Glause then asked this Court to partially remand the matter for the trial court to consider their motion to vacate and/or clarify. This Court granted the request. After this Court's remand, All-In filed its response to Ohio Metal and Glause's motion to vacate and/or clarify. Additionally, the parties continued to seek the trial court's intervention with regard to All-In removing its inventory from Ohio Metal's facility. On June 21, 2012, All-In filed a motion in which it asked the court to order Ohio Metal and Glause to permit it access to its inventory and to impose sanctions and attorney fees. Consistent with its earlier rulings, on June 29, 2012, the trial court ordered Ohio Metal and Glause to provide All-In access to its steel inventory on two specific dates. Ohio Metal and Glause later filed a motion to vacate the court's June 29th order on the basis that they had not been given an opportunity to respond before the court issued the order.

{¶8} On August 7, 2012, the trial court held a hearing on the motions pending before it. The court then issued a decision on August 14, 2012. In its decision, the court denied Ohio Metal and Glause's motion to vacate its November 29th decision as well as their motion to vacate its June 29th order. It further found that Ohio Metal and Glause's request for a clarification of the court's November 29th decision was moot, as the parties had conceded at the hearing that the remaining steel inventory had been returned to All-In. Additionally, the court found Ohio Metal and Glause in contempt and awarded All-In $4,500 "representing sanctions and reasonable attorney fees expended in repeated attempts to retrieve its steel inventory." Ohio Metal and Glause appealed from the court's decision in Appeal No. 26625.

{¶9} Upon motion, this Court consolidated Appeal Nos. 26240 and 26625 for decision. Ohio Metal and Glause's appeals are now before this Court and raise a total of six assignments

of error for our review. For ease of analysis, we consolidate two of the assignments of error in Appeal No. 26625.

## II

### Appeal No. 26240 Assignment of Error Number One

THE TRIAL COURT ERRED, TO THE PREJUDICE OF OHIO METAL, BY PROCEEDING TO TAKE EVIDENCE AND RULE ON A REMEDY THAT HAD NOT BEEN RAISED BY MOTION.

{¶10} In their first assignment of error in Appeal No. 26240, Ohio Metal and Glause argue that the trial court erred by considering and ruling upon an issue that was not raised in All-In's written motion. We disagree.

{¶11} Civ.R. 7 governs pleadings and motions and provides, in relevant part:

An application to the court for an order shall be by motion which, *unless made during a hearing or a trial*, shall be made in writing. A motion, *whether written or oral*, shall state with particularity the grounds therefor, and shall set forth the relief or order sought. The requirement of writing is fulfilled if the motion is stated in a written notice of the hearing of the motion.

(Emphasis added.) Civ.R. 7(B)(1). The rule specifically permits oral motions so long as they are stated with particularity. *Gajarsky v. Kottler*, 9th Dist. Nos. 25990 & 25994, 2012-Ohio-1817, ¶ 16; *Schrader v. Schrader*, 9th Dist. No. 2899-M, 1999 WL 771882, *1 (Sept. 29, 1999).

{¶12} The trial court here held a hearing on September 22, 2011, to consider a motion that All-In filed to enforce the parties' settlement. At the time All-In filed its motion, the one-year period established in the broker agreement portion of the settlement agreement had yet to expire. The written motion, therefore, focused on All-In's suspicions that Ohio Metal/Glause had sold a portion of All-In's steel inventory without delivering payment to the receiver. The September 22, 2011 hearing was scheduled for one day after the expiration of the broker agreement. At the beginning of the hearing, All-In notified the court that the one-year period had

expired. All-In further notified the court that Ohio Metal/Glause had not deposited proceeds in excess of $300,000 with the receiver so as to justify a six-month extension of the broker agreement, as per the terms of the parties' settlement agreement. Therefore, All-In told the court that it was "seeking to retrieve the steel inventory owned by [All-In]." The trial court took evidence at the hearing and ultimately concluded that Ohio Metal/Glause had not complied with the terms of the settlement agreement and had not satisfied the conditions warranting a six-month extension of the broker agreement. Therefore, the court terminated the broker agreement portion of the settlement agreement and ordered All-In's steel inventory be returned.

{¶13} Ohio Metal and Glause argue that the court erred by considering the issue of whether a six-month extension of the broker agreement was warranted. According to Ohio Metal and Glause, All-In's written motion only challenged their compliance with the terms of the settlement agreement, not whether they had satisfied the conditions for a six-month extension. Therefore, Ohio Metal and Glause argue that, under Civ.R. 7(B), the court erred by considering the additional issue of the extension.

{¶14} Initially, we note that all the parties here were aware that the hearing the court conducted was to take place one day after the expiration of the one-year term established by the broker agreement portion of their settlement agreement. Ohio Metal and Glause filed a hearing brief the morning of the hearing. In their hearing brief, Ohio Metal and Glause wrote:

> It is anticipated that [All-In] is going to attempt to prove that Ohio Metal has not performed its end of the Settlement Agreement. It is going to try pointing to the aforesaid "facts" (disputed vigorously by Ohio Metal) in order to persuade this Court that Ohio Metal should not be entitled to the agreed six (6) month extension of Ohio Metal's ability to continue selling the subject steel product. Even if proven, all the supposed facts do not amount to a material breach of the settlement, sufficient to deprive Ohio Metal of its extension.

Similarly, in concluding their hearing brief, Ohio Metal and Glause wrote:

Ohio Metal will prove at the hearing that it has not violated either the letter or the spirit of the Settlement Agreement. However, even if this Court should find any of [All-In's] assertions valid, same do not constitute a material breach of the Settlement Agreement and they cannot serve to defeat Ohio Metal of its right to a six month extension of the time to sell the remaining steel.

Ohio Metal and Glause's hearing brief, therefore, evidences that they were on notice that the issue of the six-month extension would likely be considered at the hearing.

{¶15} All-In specifically notified the court at the beginning of the hearing that the one-year period established by the broker agreement had expired, Ohio Metal/Glause had not satisfied the conditions for an extension, and, consequently, All-In was seeking to retrieve its steel inventory. As set forth above, Civ.R. 7(B) permits oral motions so long as they are stated with particularity. *Gajarsky*, 2012-Ohio-1817, at ¶ 16; *Schrader*, 1999 WL 771882, at *1. Ohio Metal and Glause have not explained why the trial court could not have considered All-In's request for relief by way of oral motion. They also have not argued that All-In failed to state its requested remedy at the hearing with particularity. Additionally, the record does not support Ohio Metal and Glause's claim of surprise and prejudice, as their own hearing brief indicates that they were prepared to discuss the issue of the six-month extension at the hearing. Ohio Metal and Glause's argument that the trial court erred by considering the issue of the six-month extension at the hearing and ordering relief on that issue lacks merit. Their first assignment of error in Appeal No. 26240 is overruled.

Appeal No. 26240 Assignment of Error Number Two

EVEN IF THE TRIAL COURT POSSESSED THE ABILITY TO CONSIDER ALL-IN'S REQUEST FOR TERMINATION, WHICH IT RAISED FOR THE FIRST TIME AT THE SEPTEMBER 22, 2011 HEARING, THE LEGAL INTERPRETATION OF THE SETTLEMENT ORDER (T. DOCKET #144) DID NOT PERMIT TERMINATION.

{¶16} In their second assignment of error in Appeal No. 26240, Ohio Metal and Glause argue that the trial court erred by concluding that they did not substantially perform under the settlement agreement and that they were not entitled to a six-month extension of the broker agreement. We disagree.

{¶17} A trial court's legal interpretation of a settlement agreement is a matter of contract law that this Court reviews de novo. *Dellagnese Const. Co. v. Nicholas*, 9th Dist. No. 22951, 2006-Ohio-4350, ¶ 6. If the court's ruling on the settlement agreement is a question of evidence, however, "this Court will not overturn the trial court's finding if there was sufficient evidence to support such finding." *Tech. Constr. Specialties, Inc. v. New Era Builders, Inc.*, 9th Dist. No. 25776, 2012-Ohio-1328, ¶ 18. The standard of review that applies "depends primarily on the question presented." *Id.*

{¶18} Per the terms of the parties' settlement agreement, Ohio Metal/Glause had one year (until September 21, 2011) to achieve "gross sales in excess of $300,000" in order to trigger a six-month extension of the broker agreement. The settlement agreement specifically defined "gross sales" as "sales in which the cash is in hand." It further provided that "[a]ll sale proceeds shall be sent to [the receiver], and neither Ohio Metal[] nor Mr. Glause shall accept any cash, credit, swap, or any other form of consideration for the sale of such steel inventory."

{¶19} At the September 22, 2011 hearing, Glause testified that Ohio Metal had sold $310,000 worth of All-In's steel inventory to a company named Barberton Steel Industries. Two purchase orders for the steel were completed in June and July 2011, respectively, and the checks from the transactions were received in early September. Glause admitted, however, that he only sent some $206,000 to the receiver. Glause testified that he accepted Ohio Metal's 1/3 portion of the $310,000 from Barberton Steel Industries in trade. Specifically, he accepted scrap metal as

payment for Ohio Metal's portion of the transaction. All-In's portion of the proceeds ($206,213.56) was then forwarded to the receiver. Glause claimed that it was his understanding of the settlement agreement that only All-In's portion of the proceeds would be handled by the receiver because, as the broker, Ohio Metal/Glause was entitled to immediate payment. He further claimed that it was his understanding that Ohio Metal could receive its 1/3 portion of the proceeds in any form it desired "so long as we didn't barter or trade with [All-In's] side of it."

{¶20} The plain language of the parties' settlement agreement defined "gross sales" as "sales in which the cash is in hand." The testimony set forth at the hearing established that only $206,213.56 of the proceeds received from Barberton Steel Industries constituted a gross sale because Ohio Metal/Glause accepted the remainder of the payment in scrap. Moreover, Glause admitted at the hearing that the sale to Barberton Steel Industries was the only sale that had occurred. The one-year period established by the broker agreement portion of the settlement agreement expired on September 21, 2011. Therefore, the record contains sufficient evidence that Ohio Metal/Glause failed to achieve "gross sales in excess of $300,000" during the one-year period. Because Ohio Metal/Glause failed to satisfy the conditions necessary to trigger a six-month extension of the broker agreement, they were not entitled to it.

{¶21} The trial court found that Ohio Metal/Glause breached the settlement agreement (1) by personally accepting proceeds rather than forwarding all proceeds to the receiver, and (2) by accepting a portion of the proceeds in scrap metal; "a form of consideration not contemplated or permitted by the Settlement Agreement." Based upon its finding that Ohio Metal/Glause had breached the settlement agreement, the trial court ruled that the broker agreement portion of the settlement agreement was terminated and that the steel inventory had to be returned to All-In. Ohio Metal and Glause argue that the court erred in its decision because, even if they breached

the agreement, the breach "did not amount to a material breach of the settlement, sufficient to deprive Ohio Metal of its extension."

**{¶22}** Initially, we note that All-In never sought to undo the sales that Ohio Metal and Glause made to Barberton Steel Industries. All-In accepted the money from the sales. It only requested to retrieve the steel inventory it owned, which was the steel inventory in Ohio Metal/Glause's possession. Therefore, the relief All-In sought was limited to a return of its remaining steel inventory. All-In never requested to be restored to its original position. That is, it never requested a return of all of its original inventory or to be compensated for the same. Therefore, as explained below, this Court need not determine whether Ohio Metal and Glause breached the settlement agreement in order to affirm the trial court's decision.

**{¶23}** "[A]n appellate court shall affirm a trial court's judgment that is legally correct on other grounds, that is, one that achieves the right result for the wrong reason, because such an error is not prejudicial." *Cook Family Invests. v. Billings*, 9th Dist. Nos. 05CA008689 & 05CA008691, 2006-Ohio-764, ¶ 19. By its own terms, the broker agreement here was set to expire on September 21, 2011, unless Ohio Metal/Glause achieved gross sales in excess of $300,000. The testimony set forth at the September 22, 2011 hearing supports the conclusion that Ohio Metal/Glause failed to do so. The broker agreement specifically defined "gross sales" as "sales in which the cash is in hand." Ohio Metal/Glause only received $206,213.56 "cash in hand" from the sale of the steel inventory during the one-year period established by the broker agreement. Because they only achieved $206,213.56 in gross sales, Ohio Metal/Glause did not satisfy the condition necessary to trigger a six-month extension of the broker agreement. Therefore, regardless of any breach that might have occurred, the broker agreement expired by its own terms on September 21, 2011.

**{¶24}** Ohio Metal and Glause were not entitled to a six-month extension of the broker agreement. The agreement expired when they failed to meet the condition necessary to trigger the extension. Therefore, Ohio Metal and Glause were not prejudiced by the trial court's termination of the broker agreement. Ohio Metal and Glause's second assignment of error in Appeal No. 26240 is overruled.

Appeal No. 26625 Assignment of Error Number One

THE TRIAL COURT ERRED, TO THE PREJUDICE OF OHIO METAL, CONTRARY TO OHIO CIV.R. 6(D), SUMMIT COUNTY COMMON PLEAS LOCAL RULE 7.14(A) AND IN VIOLATION [OF] OHIO METAL'S DUE PROCESS RIGHTS, BY GRANTING ORDERS WITHOUT PROVIDING REQUIRED NOTICE.

**{¶25}** In their first assignment of error in Appeal No. 26625, Ohio Metal and Glause argue that the trial court erred by issuing its June 29, 2012 order and August 14, 2012 decision. Specifically, they argue that they did not receive sufficient notice of and opportunities to respond to the motions upon which the order and decision were based.

**{¶26}** Civ.R. 6 sets forth the general notice provision that applies to written motions. That rule provides that "[a] written motion, other than one which may be heard ex parte, and notice of the hearing thereof shall be served not later than seven days before the time fixed for the hearing, unless a different period is fixed by these rules or by order of the court." Former Civ.R. 6(D). "Underlying this rule is the premise that the party opposing the motion must have sufficient notice and opportunity to respond to avoid undue prejudice." *Portage Broom & Brush Co. v. Zipper*, 9th Dist. No. 16409, 1994 WL 440441, *1 (Aug. 17, 1994). In a similar vein, the Summit County Local Rules provide that "[a]t any time after fourteen (14) days from the date of filing of [a] motion, the assigned judge may rule upon the motion. In the interest of justice, the assigned judge may enter a ruling at an earlier date if so required." S.C.C. 7.14(A).

**The June 29, 2012 Order**

{¶27} The trial court's June 29, 2012 journal entry ordered Ohio Metal and Glause to "provide [All-In] with uninterrupted access to the steel inventory owned by [All-In] from July 23 through July 27, 2012, from 8:00 a.m. to 5:00 p.m." The court issued the order in response to a motion All-In filed on June 21, 2012. Ohio Metal and Glause argue that the trial court's order violated Civ.R. 6 and S.C.C. 7.14(A) because the court issued it only eight days after All-In filed its motion.

{¶28} "Appellate courts will not review questions that do not involve live controversies." *Aurora Loan Servs. v. Kahook*, 9th Dist. No. 24415, 2009-Ohio-2997, ¶ 6. The only effect of the court's June 29, 2012 order was to provide All-In with access to its steel inventory. There is no dispute that All-In successfully retrieved its inventory from Ohio Metal/Glause in July 2012. Therefore, no live controversy exists with respect to the court's June 29, 2012 order. Ohio Metal and Glause's argument is moot, and we decline to address it. *See id.* at ¶ 6-7.

**The August 14, 2012 Decision**

{¶29} The trial court's August 14, 2012 decision resolved several pending motions. Relevant to the argument here, the decision imposed sanctions and attorney fees against Ohio Metal and Glause in response to a request for the same in All-In's June 21, 2012 motion; the same motion that led to the court's aforementioned June 29, 2012 order. In its motion, All-In sought sanctions and fees based on its assertion that Ohio Metal/Glause had denied it access to its steel inventory on no less than 11 occasions when All-In attempted to retrieve it. According to Ohio Metal and Glause, "[i]t should have been assumed" that the court denied All-In's request for sanctions and fees when the court entered its June 29, 2012 order without addressing the

request.   Ohio Metal and Glause argue that the court failed to notify them of its intention to address the issue of sanctions and fees at a later time and imposed them without giving Ohio Metal and Glause a sufficient opportunity to respond.

{¶30} The record reflects that, on July 10, 2012, Ohio Metal/Glause filed a memorandum in opposition to All-In's June 21, 2012 motion.  The memorandum in opposition, filed 11 days after the trial court's ruling on All-In's motion for access to its inventory, included a response on the issue of sanctions and also included a motion for sanctions against All-In.  Further, Ohio Metal/Glause filed a motion to vacate on July 24, 2012.  In that motion, Ohio Metal/Glause specifically asked the court to reconsider All-In's June 21, 2012 motion at an upcoming hearing the court had scheduled for August 7, 2012.  The items Ohio Metal and Glause filed with the court, therefore, sought to place the issue of sanctions and fees before the court for its consideration.

{¶31}  Further, at the scheduled August 7, 2012 hearing, the court discussed all the motions pending before it.  The following exchange took place:

> THE COURT: There's a motion for sanctions that hasn't been addressed yet by the Court, motion for sanctions and attorney[] fees * * *.  I didn't rule on the motion for sanctions and attorney[] fees based on the alleged 11 times [All-In] had to try to set up obtaining this access, so maybe we should have Mr. Glause on the stand.
>
> [OHIO METAL/GLAUSE'S COUNSEL]: Then that's what we'll do, Your Honor.
>
> THE COURT: All right.
>
> [OHIO METAL/GLAUSE'S COUNSEL]: All right.  With that said, Mr. Glause, would you take the witness stand, please.

Ohio Metal/Glause never objected to the court's consideration of All-In's request for sanctions and fees at the hearing.  They also never indicated that they did not understand the basis for All-

In's request. Instead, both sides presented evidence at the hearing with regard to whether Ohio Metal/Glause had denied All-In access to its inventory on multiple occasions.

{¶32} The trial court did not rule upon All-In's June 21, 2012 request for sanctions and attorney fees until August 14, 2012, well after the deadlines contained within Former Civ.R. 6(D) and S.C.C. 7.14(A). Moreover, the record does not support Ohio Metal and Glause's assertion that they did not have a sufficient opportunity to respond to All-In's request for sanctions and fees. Ohio Metal/Glause discussed the sanction issue in several items they filed. They also indicated that they were prepared to go forward on All-In's motion for sanctions and fees at the August 7, 2012 hearing and presented evidence on that issue. The record does not support Ohio Metal and Glause's argument that the court ruled upon All-In's motion for sanctions and attorney fees without first providing them notice and an opportunity to respond. Ohio Metal and Glause's first assignment of error in Appeal No. 26625 is overruled.

Appeal No. 26625 Assignment of Error Number Two

> THE TRIAL COURT ERRED, TO THE PREJUDICE OF OHIO METAL, BY GRANTING THE PART OF THE AUGUST 14 ORDER THAT IMPOSED ATTORNEY'S FEES AND SANCTIONS AGAINST OHIO METAL.

Appeal No. 26625 Assignment of Error Number Four

> THE TRIAL COURT ERRED, TO THE PREJUDICE OF OHIO METAL, BY DENYING ITS MOTION FOR SANCTIONS.

{¶33} In their second and fourth assignments of error in Appeal No. 26625, Ohio Metal and Glause argue that the trial court erred by granting All-In's motion for sanctions and fees and by denying their motion for sanctions.

{¶34} Initially, we reject Ohio Metal and Glause's assertion that the trial court lacked jurisdiction to grant All-In's request for sanctions and fees. Ohio Metal and Glause appealed from the trial court's November 29, 2011 decision in Appeal No. 26240 and were granted a

partial remand so that the trial court could rule upon their motion to vacate and/or clarify that decision. Post-remand, All-In filed its motion for sanctions and fees. Ohio Metal and Glause argue that the court lacked jurisdiction to consider All-In's motion because the remand was limited to the trial court's consideration of Ohio Metal and Glause's motion to vacate and/or clarify its November 29, 2011 decision.[2] It is true that "[o]nce a case has been appealed, the trial court loses jurisdiction except to take action in aid of the appeal." *In re S.J.*, 106 Ohio St.3d 11, 2005-Ohio-3215, ¶ 9. A trial court, however, "retains jurisdiction over issues not inconsistent with the appellate court's jurisdiction to reverse, modify, or affirm the judgment appealed from." *King v. King*, 9th Dist. No. 11CA0109-M, 2012-Ohio-5926, ¶ 4. The first appeal in this instance arose from the trial court's ruling that the broker agreement was terminated and All-In's steel inventory had to be returned to it due to Ohio Metal/Glause's breach of the settlement agreement. The court's award of sanctions and fees arose as a result of Ohio Metal/Glause's refusals to comply with the court's command to provide All-In with access to its steel inventory. The court's award, therefore, was not inconsistent with this Court's jurisdiction. *See Cardone v. Cardone*, 9th Dist. No. 18873, 1998 WL 597704, *3 (Sept. 2, 1998). We reject Ohio Metal/Glause's jurisdictional challenge.

{¶35} "[C]ourts possess the inherent power to do all things necessary to the administration of justice and to protect their own powers and processes." *Latson v. Chrysler Corp.*, 9th Dist. No. 19478, 2000 WL 762793, *1 (June 14, 2000). "A knowing failure to obey the lawful order of the court is a ground for a finding of contempt." *Schaffter v. Rush*, 9th Dist.

---

[2] Ohio Metal and Glause's jurisdictional challenge appears not to extend to their fourth assignment of error, wherein they argue that the court erred by denying their own post-remand motion for sanctions.

04CA0028-M, 2004-Ohio-6542, ¶ 22.  A court may order a party to pay sanctions and attorney fees for the party's failure to comply with the court's prior order.  *Latson* at *2.

**{¶36}** Brent Meyer, an agent for All-In, testified at the August 7, 2012 hearing that, despite a judgment in its favor and two court orders ordering that it be given access to its inventory, All-In was never able to gain uninterrupted access to its steel inventory prior to the court's June 29, 2012 order.  Meyer described his interaction with Glause on several occasions and testified that Glause continually placed conditions upon All-In's removal of its inventory.  Specifically, Glause indicated that Ohio Metal wanted to be compensated for storing the inventory, for supervising the removal of the inventory, and for the disruption to Ohio Metal's business.  Meyer testified that he personally had made five to six trips to Ohio Metal's Akron facility from Cincinnati to try to retrieve All-In's steel.

**{¶37}** Glause testified on behalf of Ohio Metal at the hearing and stated that Ohio Metal never denied All-In access to its inventory.  He further testified that Ohio Metal never conditioned the removal of the inventory upon things such as payment for its storage.  According to Glause, he was available for All-In to remove its inventory on numerous occasions, but, on those occasions, either no one from All-In appeared or someone appeared but was unprepared to actually move the steel inventory from Ohio Metal's facility.  Glause admitted that he told Meyer that, before All-In retrieved its steel, Ohio Metal wanted proof of insurance from All-In, a release bonding it from any damage to Ohio Metal's property as a result of the removal, a letter explaining how All-In planned on "paying [Ohio Metal the] fees that [All-In] ha[d] cost [it]," and a document to memorialize all of the foregoing.  According to Glause, however, the items "weren't necessarily conditions," but were "fair and reasonable things for any business person" to request.

{¶38} All-In sought sanctions and fees against Ohio Metal/Glause due to the efforts it expended "in repeatedly attempting to retrieve its own steel inventory." Meanwhile, Ohio Metal/Glause moved for sanctions on the basis that it had incurred expenses due to All-In's failure to timely remove its inventory. The trial court specifically noted in its decision that it had not found Glause to be a credible witness. The court found that Ohio Metal/Glause had repeatedly denied All-In access to its inventory by placing conditions on the inventory's return and had acted "in a generally uncooperative matter." The court held that "Glause's actions fly in the face of this Court's rulings and amount to clear contempt of the November 29, 2011 Order." Consequently, the court granted All-In's motion for sanctions and fees, denied Ohio Metal/Glause's motion for sanctions, and ordered Glause to pay to All-In "a total of $4,500.00 representing sanctions and reasonable attorney fees expended in repeated attempts to retrieve its steel inventory."

{¶39} Having reviewed the record, we cannot conclude that the court erred by granting All-In's motion for sanctions and by denying Ohio Metal/Glause's motion. Despite the court's original ruling in November 2011 and several subsequent orders ordering Ohio Metal/Glause to provide All-In access to its steel inventory, Ohio Metal/Glause continued to impede All-In's attempts to retrieve its inventory. The court did not err by concluding that Ohio Metal/Glause were in contempt for knowingly failing to obey the court's orders. *See Schaffter*, 2004-Ohio-6542, at ¶ 22. It also did not err by awarding All-In sanctions and fees as a result of Ohio Metal/Glause's contempt. *See Latson*, 2000 WL 762793, at *2.

{¶40} To the extent that Ohio Metal and Glause argue that the court failed to justify the amount of the award it ordered with a proper analysis, we also reject that argument. Ohio Metal and Glause's only argument is that the trial court was required to perform an analysis under

*Bittner v. Tri-County Toyota, Inc.*, 58 Ohio St.3d 143 (1991), before it could award All-In attorney fees. *Bittner*, however, was not a case involving a sanction for contempt. The trial court here awarded a flat sanction of $4,500 against Ohio Metal and Glause and described the award as "representing sanctions and reasonable attorney fees expended." The court did not conduct an attorney fee hearing or premise the size of the award upon the rate All-In's attorney charged or the hours he expended. Rather, the court simply sought to impose a penalty upon Ohio Metal and Glause for their failure to comply with its orders. Ohio Metal and Glause have not pointed this Court to any authority standing for the proposition that, before a court may award a sanction for contempt, it is required to perform a *Bittner* analysis. *See* App.R. 16(A)(7). As this Court has repeatedly held, "[i]f an argument exists that can support [an] assignment of error, it is not this [C]ourt's duty to root it out." *Cardone*, 1998 WL 224934, at *8. Ohio Metal and Glause's second and fourth assignments of error in Appeal No. 26625 are overruled.

Appeal No. 26625 Assignment of Error Number Three

THE TRIAL COURT ERRED, TO THE PREJUDICE OF OHIO METAL, BY DENYING ITS MOTION TO VACATE JUDGMENT OR CLARIFICATION.

{¶41} In their third assignment of error in Appeal No. 26625, Ohio Metal and Glause argue that the trial court erred by denying their motion to vacate and/or clarify its November 29, 2011 decision.

{¶42} As previously set forth, "[a]ppellate courts will not review questions that do not involve live controversies." *Kahook*, 2009-Ohio-2997, at ¶ 6. The trial court's November 29, 2011 decision found Ohio Metal/Glause to be in breach of the settlement agreement and ordered them to allow All-In to retrieve its inventory. There is no dispute that All-In retrieved its remaining inventory in July 2012. All-In never sought to undo any of the sales that Ohio Metal/Glause made to Barberton Steel Industries. All-In accepted the money from all of the

sales that took place. The relief All-In sought was limited to a return of its remaining steel inventory. Because All-In retrieved its remaining inventory in July 2012, no live controversy remains. Ohio Metal and Glause's third assignment of error in Appeal No. 26625 is, therefore, moot, and we decline to address it.

III

**{¶43}** Ohio Metal and Glause's first and second assignments of error in Appeal No. 26240 are overruled. Their first, second, and fourth assignments of error in Appeal No. 26625 are overruled, and their third assignment of error in that appeal is moot. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.

BETH WHITMORE
FOR THE COURT

MOORE, P. J.
HENSAL, J.
CONCUR.

APPEARANCES:

SIDNEY N. FREEMAN, Attorney at Law, for Appellants.

MARK W. BERNLOHR and ALAN M. MEDVICK, Attorneys at Law, for Appellees.

JAMES K. FERRIS, Attorney at Law, for Appellees.