[Cite as *St. Croix, Ltd. v. Damitz*, 2014-Ohio-1926.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

ST. CROIX, LTD, et al.

    Appellant

    v.

KATHLEEN DAMITZ, et al.

    Appellees

C.A. Nos.    26565
                26566

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.    CV 2009 10 7229
             CV 2008 06 4596

DECISION AND JOURNAL ENTRY

Dated: May 7, 2014

BELFANCE, Presiding Judge.

{¶1} St. Croix, LTD. appeals the judgment of the Summit County Court of Common Pleas. For the reasons set forth below, we affirm in part and reverse in part.

I.

{¶2} Kathleen Damitz is the owner of two contiguous lots that are the subject of a gas and oil lease held by St. Croix. In 1991, St. Croix attempted to drill a new well on Ms. Damitz's property, and Ms. Damitz filed a complaint seeking to enjoin St. Croix from doing so. The parties entered into a settlement agreement in 1992, and Ms. Damitz dismissed her complaint. As part of the agreement, the parties agreed that "one additional oil and gas well may be drilled on the property of [Ms.] Damitz as set forth in the Complaint and designated Alexander 3[1] and located as shown on the application for the State of Ohio permit number 2732 and that no

---

[1] There are currently three wells on Ms. Damitz's property: Alexander 1, Alexander 2, and Alexander 3.

additional wells will be drilled or attempted to be drilled on the same property." St. Croix drilled the additional well soon thereafter.

{¶3} In 2008, St. Croix obtained a permit from the Ohio Department of Natural Resources ("ODNR") to engage in directional drilling. Directional drilling involves drilling in a direction other than directly down from the wellhead. In this case, St. Croix planned to use the existing wellhead of Alexander 2 and the first 700 to 1000 feet of the well and then to drill in a new direction. It would then fill the remainder of the existing Alexander 2 well with concrete.

{¶4} We previously recounted the rather complex procedural history in the first appeal in this case as follows:

> On June 26, 2008, Ms. Damitz filed a complaint in case number CV 2008-06-4596 against St. Croix, seeking declaratory judgment, a preliminary and permanent injunction, and alleging a claim for breach of contract in regard to the parties' 1992 settlement agreement. Ms. Damitz also filed a motion for a preliminary injunction. St. Croix filed a motion to dismiss the complaint pursuant to Civ.R. 12(B)(6). Ms. Damitz opposed the motion to dismiss. The trial court never issued a formal ruling on the motion to dismiss. On September 4, 2008, the parties filed a "stipulation," agreeing that St. Croix would not commence any physical activities in relation to its proposed directional drilling without thirty days' written notice to Ms. Damitz. The parties further agreed that Ms. Damitz' motion for injunctive relief would be held in abeyance pending St. Croix'[s] notice of intent to commence secondary operations at the existing wellhead. On December 23, 2008, the trial court sua sponte ordered that case number CV 2008-06-4596 be placed on the inactive docket.
>
> On October 2, 2009, St. Croix filed a complaint in case number CV 2009-10-7229 against Ms. Damitz and her husband David Sirlouis (collectively "Damitz"), alleging two claims for declaratory judgment, one claim for breach of contract in regard to the oil and gas lease, and one claim for fraud. Damitz filed an answer and six counterclaims which reiterated her claims in her original complaint in addition to adding other claims. Damitz later amended her counterclaims, alleging two claims for declaratory judgment, one claim for preliminary and permanent injunctive relief, one claim for breach of contract in regard to the parties' 1992 settlement agreement, and two alternative claims for declaratory judgment.
>
> St. Croix moved to transfer case number CV 2009-10-7229 to the judge to whom the 2008 case had been assigned. St. Croix erroneously asserted that case number

CV 2008-06-4596 had been voluntarily dismissed and that the 2009 case constituted a refiled action. Recognizing that Damitz had not voluntarily dismissed her 2008 complaint, the trial court instead ordered that case number CV 2009-10-7229 be consolidated with case number CV 2008-06-4596 and that all further documents be filed under the 2008 case number. The trial court terminated the 2009 case from the civil docket.

*St. Croix, Ltd. v. Damitz*, 9th Dist. Summit Nos. 25629, 25630, 2012-Ohio-1325, ¶ 4-6 ("*St. Croix I*").

**{¶5}** The parties filed competing motions for summary judgment on St. Croix's complaint and the counterclaims of Ms. Damitz and Mr. Sirlouis,[2] but neither party addressed Ms. Damitz's original complaint in CV 2008-06-4596. The trial court awarded summary judgment in favor of Ms. Damitz and her husband, and St. Croix appealed. This Court reversed because the trial court had based its decision upon the existence of stipulations that were not contained in the record. *Id.* at ¶ 18.

**{¶6}** While the case was pending on appeal, Ms. Damitz filed a motion to dismiss her complaint in CV 2008-06-4596, "intend[ing] to rely upon her Amended Counterclaim [in] * * * CV 2009-10-7229." Following this Court's remand, the trial court conducted a bench trial. After the bench trial but before it issued a ruling, the trial court journalized a decision it had made during the bench trial in an entry that stated the following: "[Ms. Damitz] has dismissed her claims that were originally filed in CV 2008 06 4596. Accordingly, none of the claims, that were originally filed in CV 2008 06 4596, are still pending before the Court. The Court hereby terminates CV 2008 06 4596. The Court reactivates CV 2009 10 7229." The trial court then entered judgment on St. Croix's 2009 complaint and counts one, two, five, and six of Ms. Damitz's and Mr. Sirlouis' counterclaim. It found there was no just cause for delay.

---

[2] Mr. Sirlouis' name is spelled inconsistently throughout the record. For the sake of continuity, we spell it as it was in our previous decision.

{¶7} St. Croix has appealed, raising two assignments of error for our review.[3]

II.

ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED IN DECLARING THAT A SETTLEMENT AGREEMENT BARRED ODNR PERMITTED DIRECTIONAL DRILLING OF AN EXISTING WELL BECAUSE NO "ADDITIONAL WELL" WOULD RESULT OR BE LOCATED "ON THE SAME PROPERTY[.]"

{¶8} In St. Croix's first assignment of error, it argues that the parties' 1992 settlement agreement did not prevent it from directionally drilling to a new capture location from an existing wellhead. They argue that, since they were planning to use the same wellhead, this would not constitute an "additional well" and that, even if it could be considered an "additional well," the 1992 settlement agreement did not apply to the lot where this particular wellhead is located.

{¶9} A trial court's legal interpretation of a settlement agreement is a matter of contract law that this Court reviews de novo. *Ohio Metal Servs., L.L.C. v. All-In Metals*, 9th Dist. Summit Nos. 26240, 26625, 2013-Ohio-2174, ¶ 17. The parties' intent is presumed to be manifested in the language of the contract. *Shifrin v. Forest City Enterprises, Inc.*, 64 Ohio St.3d 635, 638 (1992). "Only when the language of a contract is unclear or ambiguous, or when the circumstances surrounding the agreement invest the language of the contract with a special meaning will extrinsic evidence be considered in an effort to give effect to the parties' intentions." *Id.* at syllabus.

{¶10} At issue in this case is the following portion of the 1992 settlement agreement, which the parties read into the record on June 5, 1992:

---

[3] In this case, as well as in *St. Croix I*, St. Croix has filed a notice of appeal for CV 2008-06-4596 and CV-2009-10-7229 despite the cases being consolidated.

The parties have agreed that one additional oil and gas well may be drilled on the property of [Ms.] Damitz as set forth in the Complaint and designated Alexander 3 and located as shown on the application for the State of Ohio permit number 2732 and that no additional wells will be drilled or attempted to be drilled on the same property.

**The Property Covered by the Settlement Agreement**

**{¶11}** As indicated above, the settlement agreement provided that one additional well could be drilled on Ms. Damitz's property and that no additional wells would be drilled or attempted to drilled "on the same property." St. Croix argues that the settlement agreement does not prevent the proposed drilling because it does not occur "on the same property" as the well at issue in the 1992 settlement agreement. St. Croix points out that Alexander 3 is on a different tax parcel than Alexander 1 and Alexander 2 and that permit 2732 refers only to the parcel on which Alexander 3 is located. Thus, it reasons, "the property of [Ms.] Damitz" must only refer to that parcel.

**{¶12}** St. Croix's interpretation is flawed. First and foremost, the settlement agreement clearly refers to "the property of [Ms.] Damitz as set forth in the Complaint[,]" and St. Croix concedes that Ms. Damitz's 1991 complaint referred to all of the property she owned, not just the parcel where Alexander 3 is now located. Furthermore, the clear and unambiguous reading of the settlement agreement is that the subject in the sentence is "one additional oil and gas well." In other words, the clear reading of the settlement agreement is "The parties have agreed that one additional oil and gas well may be drilled * * * and designated Alexander 3 and located as shown on the application for the State of Ohio permit number 2732 * * *." This "one additional oil and gas well" is to be drilled on "the property of [Ms.] Damitz as set forth in the Complaint," and "no additional wells will be drilled or attempted to be drilled on the same property."

{¶13} Thus, "on the same property" refers to "the property of [Ms.] Damitz as set forth in the Complaint." Since the property set forth in the 1991 complaint also referred to the property on which Alexander 2 was located, the settlement agreement covers the property at issue in the current action, and St. Croix's argument to the contrary is without merit.

**"Additional Well"**

{¶14} The parties agree that drilling a separate well would violate the settlement agreement (e.g., if St. Croix had drilled a new borehole next to Alexander 2, put a new pump on the surface, and called it Alexander 4). The dispute in this case is whether additional drilling from an existing borehole would create an additional well contrary to the terms of the settlement agreement. St. Croix argues that, by the clear and unambiguous language of the settlement agreement, the proposed drilling would not create an "additional well" because there would be three active wells before the project began and three active wells after the project was completed. In essence, it argues that the settlement agreement only restricted the number of active wells and created no other restrictions on St. Croix. In other words, according to St. Croix, the settlement agreement permits it to maintain three active wells on Ms. Damitz's property at any time, allowing it to close existing wells and drill replacements as many times as it desires. Ms. Damitz and Mr. Sirlouis counter that the settlement agreement prevented any further drilling on her property. According to them, the issue is not how many active wells there are on the property but how many wells, whether active or not, exist on the property.

{¶15} As noted above, the settlement agreement provides, in pertinent part,

The parties have agreed that one additional oil and gas well may be drilled on the property of [Ms.] Damitz as set forth in the Complaint and designated Alexander 3 and located as shown on the application for the State of Ohio permit number 2732 and that no additional wells will be drilled or attempted to be drilled on the same property.

The phrase "additional well" is not defined by the settlement agreement. "'Common words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument.'" *Shifrin*, 64 Ohio St.3d at 638, quoting *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 246 (1978). A "well" is defined as "a shaft or hole sunk to obtain oil, brine or gas[.]" *Merriam-Webster's Collegiate Dictionary* 1420 (11th Ed.2005). It is also defined by the Ohio Revised Code as "any borehole, whether drilled or bored, within the state, for production, extraction, or injection of any gas or liquid mineral, excluding potable water to be used as such, but including natural or artificial brines and oil field waters." R.C. 1509.01(A). A "borehole" is "a hole bored or drilled in the earth[.]" *Merriam-Webster's Collegiate Dictionary* at 144. "Additional" means "existing by way of addition." *Id.* at 14.

{¶16} At present, the Alexander 2 well consists of a relatively vertical borehole. St. Croix proposes to plug-back the borehole to a point 700 to 1000 feet below the surface and then drill in a new direction. While a portion of the existing borehole would be ultimately used to extract oil and gas, there is no doubt the proposed drilling in this case creates a new "hole bored or drilled in the earth" and that this hole would have been drilled "for production, extraction, or injection of * * * gas or liquid mineral * * *." In other words, this drilling would constitute a new well.[4] We note that the common definition of a well is in keeping with the conclusion reached by the Ohio Department of Natural Resources ("ODNR"). Michael McCormac, a permitting manager for ODNR, Division of Oil and Gas Resources Management, testified that

---

[4] St. Croix planned to remove the current well casing and then back-fill the majority of the Alexander 2 borehole. Once that was completed, St. Croix would bring a large drilling rig onto the property and drill for seven to ten days, 24 hours a day. The entire process would take approximately two weeks.

ODNR considered the proposed drilling to be a new well and that it would be assigned a new permit number.

{¶17} Nevertheless, St. Croix argues that the proposed drilling is not prevented by the settlement agreement because, after the proposed drilling would be completed, there would still only be three active wells on Ms. Damitz's property. In other words, it suggests that, if it ceases using Alexander 2, then it will only be actively using the newly drilled well plus two others, thus not exceeding the use of three active wells. However, this argument ignores the prohibition in the agreement against drilling an additional well. The agreement allowed St. Croix to drill one more well: Alexander 3. Subsequent to drilling Alexander 3, St. Croix now seeks to engage in additional drilling that creates a new well that is different from the existing Alexander 1, Alexander 2, and Alexander 3. In other words, it is in addition to the wells allowed by the settlement agreement and, therefore, prohibited by the settlement agreement.

{¶18} St. Croix's proposed drilling would constitute an additional well on the property at issue in the 1992 settlement agreement. Thus, the trial court correctly concluded that the settlement agreement prohibited St. Croix from conducting the drilling. Accordingly, St. Croix's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED IN DECLARING THAT A SETTLEMENT AGREEMENT BARRED DEVELOPMENT AND CONSTRUCTION OF ANY NEW OR ADDITIONAL PIPELINES AND RESTRICTED RIGHTS-OF-WAY ON ALL LEASED PROPERTY WHERE NO JUSTICIABLE CONTROVERSY EXISTED AND THE OIL AND GAS LEASE ALLOWED FOR PIPELINES AND RIGHTS OF WAY.

{¶19} St. Croix argues that the trial court should not have issued a declaration regarding the pipelines and rights-of-way because the issue was not ripe. We agree, in part.

**{¶20}** In its judgment entry, the trial court noted that "[t]he parties did not provide any testimony related to the pipelines and rights-of-way during trial." It also noted that "St. Croix now urges the court to rule that the claims related to the pipelines and rights-of-way are not ripe because St. Croix has not specifically sought or proposed the construction of any pipelines or right of way." The trial court determined that "* * * St. Croix has not dismissed its claim for declaratory judgment on this issue and this court is *required* to issue a ruling on this claim." (Emphasis added.).

**{¶21}** From its judgment entry, it appears the trial court believed that it was required to issue a declaratory judgment as to St. Croix's second count of the declaratory judgment complaint.[5] Specifically, it appears that the trial court felt it had no choice but to issue a declaration simply because St. Croix had not dismissed the second count and such would affect the finality of the judgment. However, under certain circumstances, a trial court is not required to issue a declaration. *See, e.g.,* R.C. 2721.07 ("Courts of record may refuse to render or enter a declaratory judgment or decree under this chapter if the judgment or decree would not terminate the uncertainty or controversy giving rise to the action or proceeding in which the declaratory

---

[5] St. Croix's second cause of action in this case requested that the trial court declare:

> that it has an absolute and continuing right to utilize [Ms. Damitz and Mr. Sirlouis'] real property for surface and subsurface development and maintenance of transmission lines for the transmission of oil, gas and other materials together with the continuing access for the construction and maintenance of said pipelines, both surface and subsurface, together with rights of way of ingress and egress across the Defendants['] real property for said uses and corresponding uses for development of adjacent properties for mineral exploration and extraction.

Ms. Damitz and Mr. Sirlouis also sought a declaration regarding pipelines and rights-of-way:

> [Ms.] Damitz is * * * entitled to a declaration that the proposed pipelines and rights of ways that St. Croix seeks to construct are prohibited by the parties settlement agreement.

relief is sought."). Thus, given its statement that it was "required to issue a ruling" since St. Croix had not dismissed its claim, the trial court apparently never considered St. Croix's arguments that a declaration as to Count 2 of its complaint may not be appropriate. Under the circumstances, it is appropriate for this Court to reverse the declaration as to Count 2 of the complaint so that the trial court may address St. Croix's arguments in the first instance.[6] *See Schaefer v. Musil*, 9th Dist. Summit No. 27109, 2014-Ohio-1504, ¶ 17.

{¶22} St. Croix's second assignment of error is sustained in part.

## III.

{¶23} St. Croix's first assignment of error is overruled, and its second assignment of error is sustained in part. The judgment of the Summit County Court of Common Pleas is affirmed in part and reversed in part, and the matter is remanded for further proceedings consistent with this opinion.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

---

[6] We express no opinion as to whether a declaration is ultimately necessary or appropriate in this case.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

EVE V. BELFANCE
FOR THE COURT

CARR, J.
HENSAL, J.
CONCUR.

APPEARANCES:

MARK H. LUDWIG, Attorney at Law, for Appellant.

R. SCOTT HALEY, Attorney at Law, for Appellant.

TERRENCE L. SEEBERGER, Attorney at Law, for Appellee.