McLAUGHLIN, Exr., Appellee,

v.

BEEGHLY et al., Appellants.

[Cite as *McLaughlin v. Beeghly* (1992), 84 Ohio App.3d 502.]

Court of Appeals of Ohio,
Franklin County.

No. 92AP–275.

Decided Dec. 22, 1992.

---

*Thompson, Hine & Flory* and *James A. Meaney;* and *Kaplan & Davidson* and *Michael J. Kaplan,* for appellee.

*Arter & Hadden, John J. Jenkins, Michael Currie* and *Nancy Manougian,* for appellants.

McCORMAC, Judge.

Plaintiff-appellee, Betty K. McLaughlin, as executor of the estate of Hugh P. McLaughlin, instituted this action against defendants-appellants, Blaine Beeghly, individually, and Fireproof Block Company, in its corporate form, seeking recovery for breach of fiduciary duty and for recovery of monies allegedly loaned to the corporation by plaintiff's decedent. McLaughlin also requested the court to convert the corporation into a partnership and order an accounting and partition. The matter was tried to the court and judgment was entered in favor of McLaughlin subject to certain setoffs.

Fireproof Block Company ("Fireproof") is a closely held Ohio corporation purchased by Blaine Beeghly, Abe Mounts and Hugh P. McLaughlin in 1969.

Each of the three men owned an equal one-third share of the stock of the corporation. In addition to the corporation, a partnership was formed between the three men to hold the real estate upon which the business was situated. Pursuant to a written instrument, the corporation was obligated to make lease payments to the partnership.

Beginning as early as 1978, questions concerning ownership and control of the corporation began to arise. In that year, Beeghly attempted to purchase McLaughlin's shares. The deal was never finalized, but $20,000 was paid to McLaughlin by Beeghly. As such, McLaughlin remained the one-third shareholder until his death in 1988. Mounts remained a one-third shareholder until 1987, when he entered into an agreement of sale with Columbus, Ltd. The purchaser's interest was later assigned to Beeghly who made an initial up-front payment and then, for a period of time, made monthly payments to Mounts out of the Fireproof checking account.

Throughout the history of this corporation, there existed an ever increasing disregard for the corporate form. Monies were transferred in and out of the corporation, particularly by Beeghly, whenever the need arose and without formal corporate authorization of any kind. The evidence indicates that Beeghly was a major shareholder or owner of several business enterprises; it became his practice to transfer funds from one to another, at times using Fireproof more as a bank than a separate manufacturing corporation. The financial records of Fireproof during the tenure of the current ownership were incomplete at best and were never the subject of a detailed audit, as that term is used in the accounting vernacular. As one witness stated, there was a great deal of "discretionary bookkeeping."

Ultimately, McLaughlin's estate filed suit against Mounts, Beeghly and Fireproof, seeking monies allegedly due the estate. The matter was tried to the court which, after a court-ordered accounting, found that Beeghly had breached his heightened fiduciary duty and that damages in the amount of $86,690.34 resulted. The court awarded this amount to McLaughlin's estate, as well as $36,387.67 for notes payable, plus accrued interest in the amount of $57,371. The court ordered McLaughlin's estate to reimburse Beeghly for the $20,000 payment made pursuant to the aborted 1978 purchase agreement, together with $16,800 in accrued interest.

Beeghly appeals and raises the following assignments of error:

"A. The trial court erred as a matter of law in concluding that Defendant/Appellant Blaine A. Beeghly, who at all relevant times owned not more than one-third of the stock of Defendant/Appellant Fireproof Block Company and was not a majority shareholder, owed a 'fiduciary duty' to Plaintiff/Appellee Betty K. McLaughlin.

"B. The trial court erred as a matter of law in concluding that Defendant/Appellant Blaine A. Beeghly, as a 'majority shareholder,' 'breached his fiduciary duty' to Plaintiff/Appellee Betty K. McLaughlin.

"C. The trial court erred in awarding Plaintiff/Appellee Betty K. McLaughlin, who owned only one-third of the stock of Defendant/Appellant Fireproof Block Company, more than one-third of the 'damages' sustained by the corporation's shareholders as a result of Defendant/Appellant Blaine A. Beeghly's 'breach of fiduciary duty.'

"D. The trial court erred as a matter of law in awarding attorney fees to Plaintiff/Appellee Betty K. McLaughlin.

"E. The trial court erred as a matter of law in ordering a post-trial accounting and in ordering Defendants/Appellants Blaine A. Beeghly and Fireproof Block Company to pay the costs associated with that accounting."

By his first assignment of error, Beeghly contends that the trial court erred in concluding that, between the years 1986 to 1989, Beeghly was a majority or controlling shareholder of Fireproof and, hence, owed a fiduciary duty to McLaughlin. Assuming without deciding that the 1987 transaction involving Mounts, Columbus, Ltd. and Beeghly did not make Beeghly a majority shareholder, we conclude that there was ample evidence to support the trial court's conclusion that Beeghly was the controlling shareholder and that, therefore, he owed a fiduciary duty to McLaughlin.

██ When addressing the duty owed between shareholders in a closely held corporation, the Supreme Court has stated that a majority or controlling shareholder owes a fiduciary duty to a minority shareholder. *Crosby v. Beam* (1989), 47 Ohio St.3d 105, 548 N.E.2d 217. This duty has been likened to that owed between partners because of the unique nature of a closely held corporation. *Donahue v. Rodd Electrotype Co. of New England, Inc.* (1975), 367 Mass. 578, 328 N.E.2d 505. When a controlling shareholder exercises that control to derive a personal benefit not available to those shareholders out of power, the controlling shareholder has breached his heightened fiduciary duty. *Crosby, supra.* In *United States v. Byrum* (1972), 408 U.S. 125, 137, 92 S.Ct. 2382, 2390, 33 L.Ed.2d 238, 248, the court stated "[a] majority shareholder has a fiduciary duty not to misuse his power by promoting his personal interests at the expense of corporate interests."

Beeghly argues that he owed no fiduciary duty to McLaughlin since the two persons were equal shareholders and, hence, that a majority, minority relationship did not exist. Typically, cases addressing a dominant shareholder's duty of fair dealing involve factual situations where a single majority shareholder, or coalition group of minority shareholders, manipulate corporate procedures for

their own advantage by exercising dominate control. At the heart of the duty is the unfair exercise of that control, which cannot always be limited to a situation in which one individual or group exercises superior voting power.

■ In the present case, Beeghly was not technically a majority owner but he exercised his control over the corporation to an extent that his actions dominated. Fireproof was not a typical corporation where stock interests were formally voted and a majority of votes equated to a majority of the power. In this case, corporate formalities were largely disregarded. Voting rights were meaningless because no meetings were held where votes were taken. There is no evidence indicating that a board of directors was ever in place. Given the facts of this action, we cannot limit the imposition of the fiduciary duty to majority ownership alone. The critical question is whether one owner so dominated the corporation that he can be said to have been in control to the exclusion of a minority shareholder. Beeghly did this by disregarding corporate procedures and exerting his dominate influence over the company, and by effectively exercising the voting power of Mounts. To all intents and purposes, Beeghly controlled the voting power of Mounts as fully as if he actually owned those shares.

There was ample evidence to support the trial court's conclusion that Beeghly exercised control over Fireproof to the extent that he owed a fiduciary duty to McLaughlin. Beeghly unilaterally, and without corporate authorization, put himself in charge of the corporate checking accounts. Much of the business at Fireproof was conducted from Beeghly's Pennsylvania office. Present and former employees testified that Beeghly told them that he was in charge and that they were to follow his directives alone. The trial court did not err in concluding that Beeghly owed a fiduciary duty to McLaughlin.

Beeghly's first assignment of error is overruled.

■ Beeghly next argues that there was insufficient evidence to support the trial court's conclusion that he breached his duty to McLaughlin. When considering an attack on a trial court's decision based upon the sufficiency of the evidence, an appellate court must give broad deference to the trial court's factual conclusions. Our review of the record shows that the trial court's findings were amply supported by the evidence.

Evidence was introduced, and Beeghly admitted that he was to receive a commission when Fireproof bought raw materials from a particular intermediary. Beeghly arranged the deal without shareholder approval and without permitting other shareholders to profit as he did. Beeghly also admitted to acting as a broker for outside parties who sought to purchase McLaughlin's announced interest. Beeghly was functioning as an agent for the buyer while holding a fiduciary relationship with the seller. There was also considerable evidence

showing that Beeghly used Fireproof funds to support other Beeghly enterprises to the detriment of Fireproof. This evidence alone is sufficient to support the trial court's findings in this respect and it is but a sampling of the evidence adduced at trial.

Beeghly's second assignment of error is overruled.

█ Beeghly argues in his third assignment of error that the trial court incorrectly awarded McLaughlin's estate one hundred percent of the damages attributable to Beeghly's breach when McLaughlin owned but one third of the company's stock. That argument is well taken, as McLaughlin is entitled to receive only his proportionate share of the damages, which is one third of the total damages since that was his percentage of ownership.

The trial court found that Beeghly breached his duty to all shareholders and assessed a value of $86,690.34 to his unfair dealings for damages. The total amount of damages is not contested and is fully supported by the evidence. Since the unconscionable acts affected all of the shareholders, as well as the corporation itself, the owners may only receive an award equal to their proportionate share of the ownership. McLaughlin's estate, as previously stated, should have been awarded one third of the $86,690.34 figure. Consequently, this matter will be remanded to the trial court for a recalculation of the award as above described.

Beeghly's third assignment of error is sustained.

In his fourth assignment of error, Beeghly raises the issue of attorney fees. He argues that the trial court erred in awarding McLaughlin attorney fees without a finding of actual malice. Arguably, there is sufficient evidence to infer malice. However, the trial court made no finding in this regard nor do we.

█ Attorney fees are recoverable, at the discretion of the trial court, in a shareholder's derivative action. *Apicella v. PAF Corp.* (1984), 17 Ohio App.3d 245, 17 OBR 512, 479 N.E.2d 315. Although, in this action, damages were found to be personal to a specific shareholder as opposed to generally awardable to the corporation, we see no reason to deviate from the logic applicable to a derivative action. The same principles of liability are applicable and a derivative action would have been appropriate had it not been that the recovery in that case would be vested in the majority control of the offending party. To hold otherwise would be to dilute a minority shareholder's rights under *Crosby*. Typically, a shareholder's action is complicated and costly to pursue. The inability to award attorney fees, under the proper circumstances, would stifle the legitimate exercise of a minority shareholder's right to enforce the fiduciary duty owed to him by the controlling shareholder. There was no abuse of discretion in the trial court's award.

Beeghly's fourth assignment of error is overruled.

Finally, in his fifth assignment of error, Beeghly contends that the trial court erred by requiring that Fireproof and he pay for the cost of the court-ordered independent accounting.

Beeghly was in control of the company's books at all times relevant to this action. Those books were in disarray and had never been the subject of a detailed independent audit. Without an outside accounting, it was difficult, if not impossible, for the trial court to have arrived at a coherent decision. Furthermore, it was Beeghly's breach of duty which gave rise to the need for an accounting. To force plaintiff to incur accounting fees would permit Beeghly to benefit from his own misdeeds.

Beeghly's fifth assignment of error is overruled.

Beeghly's first, second, fourth and fifth assignments of error are overruled. Beeghly's third assignment of error is sustained and this matter is remanded to the trial court for further proceedings consistent with this opinion.

*Judgment accordingly.*

BOWMAN and PETREE, JJ., concur.