[Cite as *Fuline v. Green*, 2013-Ohio-2171.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

AMY M. FULINE, et al.

    Appellees

    v.

NATHAN R. GREEN

    Appellant

C.A. No.     26586

APPEAL FROM JUDGMENT
ENTERED IN THE
BARBERTON MUNICIPAL COURT
COUNTY OF SUMMIT, OHIO
CASE No.     08 CVE 1938

DECISION AND JOURNAL ENTRY

Dated: May 29, 2013

---

HENSAL, Judge.

{¶1}  Nathan Green appeals an order of the Barberton Municipal Court requiring him to pay Amy and Michael Fuline's attorney fees.  For the following reasons, this Court reverses.

I.

{¶2}  In 2007, Mr. Green rear-ended Mrs. Fuline's motor vehicle at low speed. Although Mrs. Fuline did not have any obvious injuries, she testified that, because she was seven months pregnant, she drove immediately to the emergency room to get examined to determine whether the accident had in any way adversely affected her high-risk pregnancy.  While at the emergency room, she was examined by a doctor.  The doctor's diagnosis was that she did not have any injuries.

{¶3}  The next morning Mrs. Fuline began having neck and shoulder pain.  Mrs. Fuline opined that, because of her pregnancy, she would not be prescribed most prescription medications for pain.  She testified that for this reason, she did not immediately seek the

assistance of a medical doctor for her pain. Instead, she sought treatment from a massage therapist who had treated her for a different issue several years earlier.

{¶4} Mrs. Fuline testified that the therapy sessions provided her temporary relief, but did not completely alleviate the pain. Accordingly, four months after the accident, she told her primary care doctor about her pain. Because Mrs. Fuline was breastfeeding, the doctor could not prescribe narcotic pain medication, so he instructed her to begin a physical therapy regimen and continue seeing the massage therapist. The pain, however, still did not abate.

{¶5} In 2008, Mrs. Fuline and her husband sued Mr. Green. During discovery, they sought admissions from Mr. Green under Civil Rule 36. Mr. Green admitted some of the matters, but denied others. At trial, a jury found in favor of the Fulines and awarded them $7131. The Fulines subsequently moved for their attorney fees under Civil Rule 37(C), arguing that Mr. Green did not have good reason for denying some of their requests for admission. The court granted their motion and awarded the Fulines over $5000 in attorney fees. On appeal, this Court reversed, concluding that the municipal court had applied the wrong standard. *Fuline v. Green*, 9th Dist. Nos. 25704, 25936, 2012-Ohio-2749, ¶ 10-11. On remand, the municipal court again determined that the Fulines were entitled to attorney fees. Mr. Green has appealed, assigning as error that the court failed to follow this Court's mandate.

II.

ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED IN FAILING TO FOLLOW THE SPECIAL MANDATE OF THIS COURT TO APPLY THE CORRECT STANDARD OF LAW SET FORTH AT *FULINE V. GREEN*, 9TH DIST. NOS. 25704, 25936, 2012-OHIO-2749, ¶10.

{¶6} Mr. Green argues that the municipal court failed to follow the directions this Court provided in its decision. As this Court noted in its previous opinion in this case, "[t]he

decision to impose sanctions pursuant to Civ.R. 37 is within the discretion of the [municipal court], and this Court will not reverse the [municipal court]'s decision absent an abuse of discretion." *Fuline* at ¶ 6. "However, whether the trial court correctly applied the law to the facts of a case presents a question of law, which we review de novo." *Id.*

{¶7} In its prior decision, this Court noted that the municipal court granted the Fulines' motion for attorney fees because Mr. Green "failed to present any evidence" to justify his denial of the admissions the Fulines requested. *Id.* at ¶ 9. This Court determined that Civil Rule 37(C), however, "does not require the denying party 'to present * * * evidence to justify the denial' of a request for admission." *Id.* at ¶ 10. Rather, a party does not have to pay attorney fees under the rule if a request for admission was objectionable, if there was good reason for the party's denial of the request, or if the issue that was the subject of the request was not of substantial importance. *Id.* citing Civ.R. 37(C); *Salem Med. Arts & Dev. Corp. v. Columbiana County Bd. of Revision*, 82 Ohio St.3d 193, 196 (1998). We remanded the case to the municipal court, indicating that it would "need to review the requests for admissions in light of what the Fulines eventually proved. If the Fulines proved matters denied by Green, the trial court 'will then need to consider whether each matter denied was genuinely in issue, using an objective standard of reasonableness' or whether the issues denied were not of substantial importance." *Id.* at ¶ 11, quoting *Salem Med. Arts* at 196.

{¶8} On remand, the municipal court determined that the Fulines proved matters denied by Mr. Green. In analyzing whether he "had a good reason to deny the Requests," the court noted that Mr. Green "offered no evidence, witnesses, or testimony to support [his] general denials * * *." It, therefore, concluded that he "denied the Requests without any justification"

and "without good reason." It further determined that the issues were important and, accordingly, awarded the Fulines their attorney fees.

{¶9} Mr. Green argues that the municipal court repeated the mistake it made in its first order on attorney fees. He argues that, just as the court improperly concluded in its first order that he did not have good reason for his denials because he "failed to present any evidence," the court improperly concluded in its second order that he did not have a good reason for his denials because he "offered no evidence, witnesses, or testimony[.]"

{¶10} In *Salem Medical Arts*, the Ohio Supreme Court explained that a trial court's review of a party's denial of an admission under Civil Rule 37(C) must be "meaningful," which means that it "must objectively evaluate whether 'good reason' existed for each denial." *Id*. at 196, quoting Civ.R. 37(C). It also explained that "only those matters actually determined to be 'in issue' meet the standard of 'good reason' to deny." *Id*., quoting 1970 Advisory Committee Note, Fed.R.Civ.P. 36(a).

{¶11} The municipal court's order in this case is inconsistent. Initially, it "finds that Defendant's denials of the Requests were made without good reason." Later in the same paragraph, however, it "finds that each matter denied by the Defendant was genuinely in issue." As explained by the Ohio Supreme Court, if a matter was "in issue," the party had "good reason" to deny the request for admission. *Salem Med. Arts* at 196. Accordingly, the municipal court's finding that each matter that Mr. Green denied was "in issue" is inconsistent with its finding that his denial of the requests for admission was "without good reason."

{¶12} The municipal court's finding that the denied matters were in issue appears to be a typographical error because the court ultimately awarded the Fulines their attorney fees. Per our remand instruction, the court determined that the Fulines proved matters denied by Green, that

each denied matter was of substantial importance, and that those denied matters were not genuinely at issue. Accordingly, we will proceed to address whether the court correctly analyzed if, using an objective standard of reasonableness, the matters denied by Mr. Green were of substantial importance and not in issue. *Fuline*, 2012-Ohio-2749, ¶ 11.

{¶13} The first request for admission that Mr. Green denied was that Mrs. Fuline had "sustained injuries as a result of the accident of June 14, 2007 to her neck, upper back, shoulders and headaches." According to Mr. Green, he had good reason to deny this request because Mrs. Fuline did not report any injuries to a police officer following the collision and because the emergency-room doctor who examined her later that day to determine if her high-risk pregnancy was further at risk concluded that she had been in a "[m]otor vehicle accident without injuries." He also notes that Mrs. Fuline did not see a medical doctor for her injuries until four months after the accident, and that she gave inconsistent accounts to her various treatment providers about when her symptoms developed.

{¶14} The second request for admission that Mr. Green denied was that Mrs. Fuline "received care and treatment for her injuries caused in the accident of June 14, 2007," from the hospital emergency room, her primary care doctor, the massage therapist, and a physical therapist. According to Mr. Green, the denial was proper because, if Mrs. Fuline was not injured by the collision, the treatment she received could not be for injuries arising out of it.

{¶15} The third request for admission that Mr. Green denied was that Mrs. Fuline had incurred $3210 in medical expenses for care and treatment resulting from the accident. He argues that, even if Mrs. Fuline was injured by the accident, her medical expenses were not $3210. He notes that at trial, the Fulines presented evidence that the total charges were $6937, which was reduced to $3631 after insurance-related write-offs. He also points out that Mrs.

Fuline's doctor conceded that some of the charges listed on the bills, such as for a flu vaccination, were not related to the accident.

{¶16} The fourth request that Mr. Green denied was that the medical expenses that Mrs. Fuline incurred were reasonable and necessary. The fifth request was that all care and tests ordered for her were reasonable, necessary, and proximately related to the accident. Mr. Green argues that, just like the first two requests that he denied, these matters were also in issue in the case because it was not clear that any pain that Mrs. Fuline received treatment for was caused by the accident.

{¶17} The sixth and seventh requests that Mr. Green denied related to whether Mr. Green's insurance company made a good faith attempt to negotiate a settlement. Mr. Green argues that these questions were not of substantial importance since the Fulines never submitted a settlement demand to his insurer.

{¶18} In the Fulines' second set of requests for admission Mr. Green objected to two requests that related to the authenticity of Mrs. Fuline's medical records. Although he admitted the authenticity of her hospital, primary-care-doctor, and physical-therapy records, he objected to the characterization of the massage therapist's treatment notes as medical records and argued that they were uncertified. According to Mr. Green, the Fulines were not affected by the parts of the second set of requests that he denied because the parties ended up working out all the issues related to the authenticity of Mrs. Fuline's medical records prior to trial.

{¶19} We agree with Mr. Green that, using an objective standard of reasonableness, each of the requests for admission that he denied concerned matters that were either "in issue" or "not of substantial importance." *Fuline*, 2012-Ohio-2749 at ¶ 11. The requests regarding whether the accident caused injury to Mrs. Fuline's neck, back, and shoulder and whether she

received treatment that was necessary and proper for those injuries each rested on the credibility of Mrs. Fuline. Mrs. Fuline's credibility, however, was put into question by Mr. Green. As Mr. Green has noted, following the accident, she did not tell the responding officer or an emergency room doctor that she had any neck, back or shoulder pain. In fact, she did not tell any medical doctor about the pain until four months after the accident. She also gave her massage therapist, primary-care doctor, and physical therapist a different timeframe with respect to how many days or weeks after the accident her pain started.

{¶20} In its decision, the municipal court focused exclusively on whether Mr. Green challenged Mrs. Fuline credibility through his own evidence, witnesses, or testimony. There are many ways, however, to challenge a party's credibility, including pointing out inconsistencies in their testimony. *Kenney v. Fealko*, 75 Ohio App.3d 47, 51 (11th Dist.1991) ("The Ohio Rules of Evidence do not enumerate the various ways in which the credibility of a witness can properly be attacked."); *see* Evid. R. 607(A) (providing the circumstances that must exist before the party who called a witness may attack the credibility of that witness by means of a prior inconsistent statement); *State v Haines*, 112 Ohio St.3d 393, 2006-Ohio-6711, ¶ 44 ("[S]eemingly inconsistent actions are relevant to a witness's credibility.").

{¶21} The Fulines argue that, because they had expert testimony from Mrs. Fuline's primary care doctor, Mr. Green could not reasonably rely on mere conjecture and the minor inconsistencies in her medical reports. The doctor's conclusions regarding causation, however, were based on what Mrs. Fuline had told him. By casting doubt on Mrs. Fuline's credibility through cross-examination, therefore, Mr. Green also called into question her doctor's conclusions, even without calling his own medical expert. The Fulines also argue that it was undisputed that, because of Mrs. Fuline's pregnancy, she could not receive many of the usual

tests and treatments for neck and spine injuries. The fact that Mrs. Fuline's doctor recommended that Mrs. Fuline continue massage therapy, however, does not mean that Mr. Green was foreclosed from challenging whether she was justified in starting therapy treatments without a medical doctor's advice or proffering challenges regarding the frequency and duration of the method of treatment.

{¶22} Upon review of the record, we conclude that Mr. Green's denial of Mrs. Fuline's statements regarding the necessity and reasonableness of all of her medical care meets the objectively reasonable standard. *See Sinea v. Denman Tire Corp.*, 135 Ohio App.3d 44, 70 (11th Dist.1999); *Youssef v. Jones*, 77 Ohio App.3d 500, 510 (6th Dist.1991) ("We conclude that doubt regarding the credibility of two interested parties as to these facts is a good reason to believe that these issues were disputable and should be denied."). With respect to the request concerning the amount of Mrs. Fuline's medical expenses, we conclude that Mr. Green had good reason for denying it because the medical bills that the Fulines attached to the request included a charge for a flu vaccination. Mr. Green had reason to question whether it was reasonable and necessary for Mrs. Fuline to receive the vaccine because of the accident.

{¶23} Regarding the requests for admission concerning Mr. Green's insurance company, the Fulines do not dispute Mr. Green's assertion that these issues were of no substantial importance. Regarding the authenticity of medical records issues raised in the Fulines' second set of requests for admissions, the Fulines argued in their trial court brief that Mr. Green's denial of the requests forced them to call Mrs. Fuline's primary care doctor to prove the authenticity of his records. In his response to the requests, however, Mr. Green admitted the authenticity of all of the primary-care doctor's records that the Fulines attached to their requests for admission. The only medical records that the Fulines submitted at trial that Mr. Green did not admit the

authenticity of were the records of Mrs. Fuline's massage therapist. Contrary to the Fulines' assertion, they did not have to call anyone to testify about the authenticity of those documents at trial. There is nothing in the record that indicates that the Fulines suffered any additional inconvenience or expense because of Mr. Green's denial of their authenticity of the massage therapist's records.

{¶24} Because the municipal court focused on whether Mr. Green submitted any documents or other evidence to demonstrate that he had good reason for denying the Fulines' requests for admissions, it incorrectly concluded that the matters denied by Mr. Green were not in issue. Upon review of the record, we conclude that the issues Mr. Green denied were either "in issue" or "of no substantial importance." *Salem Med. Arts*, 82 Ohio St.3d at 196. The municipal court, therefore, abused its discretion when it ordered Mr. Green to pay the Fulines' attorney fees. Mr. Green's assignment of error is sustained.

III.

{¶25} The municipal court incorrectly ordered Mr. Green to pay the Fulines' attorney fees. The judgment of the Barberton Municipal Court is reversed.

Judgment reversed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Barberton Municipal Court, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellees.

JENNIFER HENSAL
FOR THE COURT

MOORE, P. J.
CARR, J.
CONCUR.

APPEARANCES:

ADAM E. CARR, Attorney at Law, for Appellant.

STEPHEN P. GRIFFIN and MICHAEL J. KAHLENBERG, Attorneys at Law, for Appellee.