[Cite as *Retreat at Lake Medina Assn., Inc. v. Haller*, 2014-Ohio-4266.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

THE RETREAT AT LAKE MEDINA
ASSOCIATION, INC.

    Appellee

    v.

SONJA M. HALLER, et al.

    Appellant

C.A. No.     13CA0092-M

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.    12CIV1154

DECISION AND JOURNAL ENTRY

Dated: September 29, 2014

HENSAL, Presiding Judge.

{¶1}    Sonja Haller appeals a judgment of the Medina County Court of Common Pleas that held that the Retreat at Lake Medina Association, Inc. may levy assessments against vacant, undeveloped parcels that are within its boundaries. For the following reasons, this Court affirms.

I.

{¶2}    In 1992, Omega Properties, Inc. began developing an area of land that it called the Retreat at Lake Medina. It also formed the Association to maintain the development's common areas. In July 2005, Ms. Haller acquired one of the parcels, Sublot 5, which contained a single-family house. A few months later, she bought Sublot 17, which is a vacant parcel in a different part of the development. According to Ms. Haller, even though she owned two different parcels from 2005 to 2011, the Association only made her pay assessments for the one with a dwelling.

{¶3}    In January 2011, Ms. Haller acquired a third parcel in the development, Sublot 6A, which was adjacent to Sublot 5. According to Ms. Haller, because the lot was too small to

build on, she consolidated it with Sublot 5, and the combined parcel came to be known as Sublot 5A. Ms. Haller recorded the combined lot with the Medina County Recorder.

{¶4} While Ms. Haller was in the process of consolidating the lots, she received a notice from the Association telling her that it was going to begin levying assessments on the owners of vacant lots. When Ms. Haller refused to pay assessments for both Sublot 5 and Sublot 6A, the Association filed a foreclosure action against her. Ms. Haller counterclaimed, seeking, among other things, a declaration that the Association has no authority to levy assessments on vacant parcels.

{¶5} The Association moved for partial summary judgment, arguing that it is entitled to levy assessments on vacant lots. Upon review of the Declaration of Covenants governing the developments, the trial court determined that it allows the Association to levy assessments on undeveloped parcels. It concluded, however, that the Association may only levy one assessment on a combined lot such as Sublot 5A. The court, therefore, granted the Association's motion for partial summary judgment in part and denied it in part. Ms. Haller has appealed, assigning as error that the trial court incorrectly held that the Association may levy assessments against vacant, undeveloped parcels of land.

II.

ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT CONSTRUED THE DECLARATION OF COVENANTS, RESTRICTIONS, AND EASEMENTS OF THE RETREAT AT LAKE MEDINA (THE "DECLARATION') TO PERMIT ASSESSMENTS TO BE LEVIED AGAINST VACANT, UNDEVELOPED PARCELS OF LAND.

{¶6} Ms. Haller argues that the trial court incorrectly granted partial summary judgment to the Association because the Declaration of Covenants does not grant the Association

authority to levy assessments against vacant parcels. Under Civil Rule 56(C), summary judgment is appropriate if:

> (1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977). To succeed on a motion for summary judgment, the movant bears the initial burden of demonstrating that there are no genuine issues of material fact concerning an essential element of the opponent's case. *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). If the movant satisfies this burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 293, quoting Civ.R. 56(E). This Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996).

{¶7} The Declaration of Covenants provides that, "[u]pon the conveyance of each Living Unit from [Omega] to a Living Unit Owner * * * such Living Unit Owner * * * shall be deemed to covenant and agree to pay to the [Association], * * * [a]n annual assessment * * *." "Living Unit" means "a Parcel of Land located within The Retreat at Lake Medina and a single-family dwelling, with garage attached, situated thereon. The fee * * * to any such Parcel shall not be separated from the fee * * * to the dwelling built thereon as shown." "Living Unit Owner" means "any and all owners * * * of a fee * * * to a Parcel or a Parcel and Cluster Dwelling situated within The Retreat at Lake Medina at any time during the term of these Covenants and Restrictions but shall not mean or refer to the Developer * * *." The Declaration also provides that certain lots are exempt from assessments, including "[a]ny Parcel upon which the Developer has not built a Living Unit. When the Living Unit is built and is sold, such Living

Unit, parcel or a vacant parcel of land, when it is sold, shall lose its exempt classification * * *. No Living Unit devoted to dwelling use shall be exempt from said assessments * * *."

{¶8}    Ms. Haller argues that vacant parcels are not subject to assessment because they do not qualify as "Living Units" because they are not a parcel of land "and a single-family dwelling."   "The cardinal principle in contract interpretation is to give effect to the intent of the parties." *Transstar Elec., Inc. v. A.E.M. Elec. Servs. Corp.*, __ Ohio St.3d __, 2014-Ohio-3095, ¶ 9.  "[W]e will look to the plain and ordinary meaning of the language used in the contract unless another meaning is clearly apparent from the contents of the agreement.  When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties." *Id*., quoting *Sunoco, Inc. (R & M) v. Toledo Edison Co.*, 129 Ohio St.3d 397, 2011-Ohio-2720, ¶ 37.

{¶9}    The term "Living Unit" is used inconsistently throughout the Declaration of Covenants.  According to Ms. Haller, the term refers to the collective unit of a parcel of land together with a dwelling that sits on the land.  The Association, on the other hand, argues that the term simply refers to a parcel of land, but that, if a parcel contains a dwelling, the dwelling is also considered part of the unit.  We note, however, that the Declaration's exempt property provision states that "[a] parcel upon which the Developer has not built a Living Unit."  In that provision, the term "Living Unit" certainly refers only to a dwelling, which is not a definition suggested by either party.

{¶10}  Upon review of the Declaration of Covenants as a whole, we conclude that the term "Living Unit" must refer 1) to one of the parcels of land located within the Retreat; 2) a single-family dwelling unit that was constructed on one of the parcels; or, 3) jointly, to a parcel of land that contains a single-family dwelling.  Construing the definition so that its meaning

changes depending on the context is the only interpretation of "Living Unit" that allows it to remain consistent with each of the Declaration's various usages of the term. For instance, when the Declaration of Covenants mentions a "parcel upon which the Developer has not built a Living Unit," the term is referring to a single-family dwelling. When it indicates that "[n]o Living Unit devoted to dwelling use shall be exempt from said assessments * * *," however, the term is referring only to a parcel of land. That is why the definition of Living Unit provides that it can refer to a parcel of land "and" it can refer to a single-family dwelling that is situated on one of the parcels.

{¶11}  Because the meaning of the term "Living Unit" varies throughout the Declaration of Covenants, the question remains as to which usage was intended in the provision on assessments, which provides that, "[u]pon the conveyance of each Living Unit * * *," the owner of the unit is subject to assessments. We conclude that the only reasonable interpretation of the term in that context is that it refers to a parcel with or without a dwelling. We reach this conclusion because, according to the assessment provision, the person responsible for paying assessments is a "Living Unit Owner." According to the definition of Living Unit Owner, one becomes a Living Unit Owner by having "title to a Parcel" or a "Parcel and Cluster Dwelling." Because someone becomes a Living Unit Owner simply by having title to a parcel, regardless of whether it contains a dwelling, it stands to reason that the definition of Living Unit that applies in the assessment provision includes conveyances of vacant parcels.

{¶12}  This Court's interpretation of the assessment provision is also consistent with the Declaration's exemption provisions. Under the exempt property provision, "a vacant parcel of land, when it is sold, shall lose its exempt classification * * *." The same provision later

reinforces that "No Living Unit devoted to dwelling use shall be exempt from * * * assessments * * *[,]" suggesting that a Living Unit need not contain a dwelling.

{¶13} We further note that, if this Court were to accept Ms. Haller's definition of Living Unit, vacant parcels could never be subject to assessments, even if someone eventually builds a dwelling on them. According to the assessment provision, it is the conveyance of a "Living Unit" from Omega to a Living Unit Owner that permits the Association to levy assessments against the parcel. If the term Living Unit in the assessment provision refers only to a parcel with a dwelling, a vacant parcel that is built upon after the Developer conveyed it would never trigger the "conveyance of [a] Living Unit from [Omega]" precondition for assessments.

{¶14} Because an interpretation of "Living Unit" that allows it to mean a parcel, a dwelling, or both depending on the context is the only interpretation that satisfies all of the ways the term is used throughout the Declaration of Covenants, we conclude that the trial court correctly determined that the Association may levy assessments against vacant parcels. Ms. Haller's assignment of error is overruled.

## III.

{¶15} The trial court correctly granted summary judgment to the Association. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

WHITMORE, J.
CONCURS.

MOORE, J.
CONCURS IN JUDGMENT ONLY.

APPEARANCES:

IRVING B. SUGERMAN and LAURA E. KOGAN, Attorney at Law, for Appellant.

CULLEN J. COTTLE, Attorney at Law, for Appellee.